IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PEPPER ESCALANTE o/b/o                                           PLAINTIFF
K.E.E., a minor

    v.                                    CIVIL NO. 11-6008

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                   DEFENDANT

## MEMORANDUM OPINION

    Plaintiff, Pepper Escalante, brings this action on behalf of her minor daughter, K.E.E., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying K.E.E.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.**    **Procedural Background:**

    Plaintiff protectively filed the application for SSI on her minor daughter K.E.E.'s behalf on August 25, 2008, alleging that K.E.E., who was four years of age when the application was filed, is disabled due to bilateral trigger thumbs, a learning disorder, and an anger problem. (Tr. 67-69, 74). An administrative video hearing was held on July 22, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 22-34).

    The ALJ, in a written decision dated September 2, 2009, found that K.E.E. had the following severe impairments - bilateral thumb trigger fingers status post right trigger thumb release; attention deficit hyperactivity disorder (ADHD); and oppositional defiant disorder (ODD). (Tr. 11). However, the ALJ further found that as K.E.E. did not have an impairment

or combination of impairments that was medically or functionally equal to a listed impairment, K.E.E. was not disabled. (Tr. 8-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on January 13, 2011. (Tr. 1-3). In denying Plaintiff's request for review, the Appeals Council stated:

> In looking at your case, we considered the Administrative Law Judge's finding that you had no limitation in the domain of interacting and relating to others even though he found your ODD to be a severe impairment. Because there was no evidence to support a conclusion that this was a marked impairment, we will not change the Administrative Law Judge's decision.

(Tr. 1-2). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and this case is before the undersigned pursuant to the consent of the parties. (Docs. 6, 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d). In the present case, the ALJ found that K.E.E.'s claim failed at step three, as K.E.E. did not have an impairment that met or medically or functionally equaled a listed impairment. The ALJ specifically considered the Listings in 101.02, 112.04, and 112.11 when making this determination. 20 C.F.R. Pt. 404, Subpt. P, App.

The Court finds there is substantial evidence in the record to support the ALJ's determination that K.E.E.'s impairments did not meet or medically equal in severity any listed impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B. The Court next addresses whether K.E.E.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [K.E.E.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a(a). Functional equivalence may be established by demonstrating marked

limitations in two, or extreme limitations[1] in one of the following "domains:" 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. See 20 C.F.R. § § 416.926(b)(1), 416.926a(d). The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers. SSR 09-2P. In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information." Lawson v. Astrue, 2009 WL 2143754, at *9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. § 416.9249.

**III.   Discussion:**

Plaintiff argues the following in this appeal: 1) substantial evidence does not support the ALJ's decision that K.E.E. did not have an impairment that satisfied functional equivalence in the broad areas of development and functioning; 2) the ALJ erred in finding K.E.E. did not have two or more marked limitations; and 3) the ALJ erred in discrediting the opinion of Dr. John

---

[1] (2)Marked limitation -(I)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.... (3)Extreme limitation - (I) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § § 416.926a(e)(2) and (3).

Aruffo. Defendant argues substantial evidence supports the ALJ's determination. The Court will address these arguments when discussing each domain separately.

**A.     Domains:**

**1.     Acquiring and Using Information:**

The ALJ found that K.E.E. had no limitation in this domain. In making this determination, the ALJ noted that in a Function Report completed in December of 2008, Plaintiff indicated that K.E.E. was not able to recite number to 10, did not know her birthday, and could not read capital letters of the alphabet. (Tr. 115-124). In discounting Plaintiff, the ALJ pointed out that a Teacher Questionnaire dated September 30, 2008, completed by Mr. Kipp Riddle, the coordinator of K.E.E.'s preschool, reported that with the exception of having an obvious problem with expressing ideas in written form due to K.E.E.'s trigger thumbs, K.E.E. had no problems in this area of functioning. (Tr. 193-200). Mr. Riddle noted that K.E.E. was "making good progress" despite dealing with the multiple surgeries and associated pain and restrictions. Mr. Riddle completed a second Teacher Questionnaire on November 21, 2008, wherein, he noted that no problems were observed in this domain, and that K.E.E.'s functioning appeared age-appropriate. (Tr. 232, 241-247). Mr. Riddle went on to say that K.E.E. was a model student who followed directions.

Plaintiff argues that the ALJ erred in not giving controlling weight to Dr. Aruffo's July of 2009 opinion that K.E.E. was markedly impaired in this domain. In giving Dr. Aruffo's opinion less weight, the ALJ noted that Dr. Aruffo met with K.E.E. and Plaintiff one time for an initial assessment in June of 2009, and that Dr. Aruffo stated that he based his opinion off of the

observations made by K.E.E.'s therapist Jill Cautheu. (Tr. 320-321,337). It is noteworthy that the record revealed K.E.E. and Plaintiff saw Ms. Cautheu on one occasion in April of 2009. (Tr. 323-335). Furthermore, the ALJ noted that while Plaintiff reported to both Dr. Aruffo and Ms. Cautheu that K.E.E. exhibited bad behavior and complained of pain at both school and home, Mr. Riddle emphasized in both reports that he completed that K.E.E. was making good progress and that K.E.E. followed directions.

As addressed above, the ALJ clearly stated the weight that was given to Dr. Aruffo's opinion, and the evidence that was used to support the decision not to give controlling weight to Dr. Aruffo's opinion. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in the case record); Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003) (medical opinions of a treating physician are normally accorded substantial weight, but they must not be inconsistent with other evidence on the record as a whole).

In further support of his finding, the ALJ noted that non-examining medical consultants, Dr. Susan Manley and Dr. William Collie, opined that K.E.E. had no limitation in this domain. (Tr. 203-208, 250-255)

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that K.E.E. had no limitation in acquiring and using information.

### 2. Attending and Completing Tasks:

The ALJ found that K.E.E. had no limitation in attending and completing tasks. Based on the reasoning addressed in the discussion of acquiring and using information above, the ALJ did not give controlling weight to Dr. Aruffo's July of 2009 opinion that K.E.E. was markedly impaired in this domain.

Regarding this domain, the ALJ noted that in the Function Report completed in December of 2008, Plaintiff indicated that K.E.E. was only able to pay attention to television, music, reading aloud or games for five to ten minutes. However, the ALJ pointed out that in the Teacher Questionnaires, Mr. Riddle reported that no problems were observed in this domain, and that K.E.E.'s functioning appeared age-appropriate.

The ALJ also noted that the evidence revealed that K.E.E. was taking Adderall to control her symptoms related to her ADHD, and that Plaintiff had testified during the administrative hearing in July of 2009, that when K.E.E. was on her medication, her behavior was much better, and that it was just in the evening when her medication began to wear off, that K.E.E. began having problems. (Tr. 28-29). Plaintiff also testified at the administrative hearing that K.E.E.'s pre-school had complained that K.E.E. was not paying attention, and that K.E.E. would "zoom off" like she was in another place. (Tr. 30). The ALJ noted that Plaintiff's testimony is not supported by Mr. Riddle's reports that K.E.E. was "a very happy, well-mannered little girl," and that K.E.E. "exhibited consistently good, even tempered, cooperative behavior at school." (Tr. 200, 247). Mr. Riddle went on to report that the school had had "<u>no problems</u> whatsoever with [K.E.E.'s] behavior at school." (Tr. 246).

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Manley and Dr. Collie, opined that K.E.E. had no limitation in this domain. (Tr. 203-208, 250-255).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that K.E.E. had no limitation in attending and completing tasks.

### 3. Interacting and Relating with Others:

The ALJ found that K.E.E. had no limitation in interacting and relating with others. Based on the reasoning addressed above, the ALJ did not give controlling weight to Dr. John Aruffo's July of 2009 opinion that K.E.E. was less than markedly impaired in this domain.

Regarding this domain, the ALJ noted that in the Function Report completed in December of 2008, Plaintiff indicated that K.E.E. was unable to share toys, play pretend with other children, or play board games. (Tr. 17, 122). However, Plaintiff also reported that K.E.E. enjoyed being with other children her age; showed affection towards other children; was affectionate towards her parents; took turns; and played games like tag and hide-and-seek. (Tr. 122). The ALJ pointed out that Mr. Riddle reported that no problems were observed in this domain, and that K.E.E.'s functioning appeared age-appropriate. Mr. Riddle also reported that no implementation of a behavior modification strategy was needed for K.E.E. (Tr. 196, 243). Mr. Riddle also found K.E.E. to be a "model student."

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Manley and Dr. Collie, opined that K.E.E. had no limitation in this domain. (Tr. 203-208, 250-255).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that K.E.E. had no limitation in interacting and relating with others.

### 4. Moving About and Manipulating Objects:

The ALJ found that K.E.E. had marked limitations in moving about and manipulating objects. In making this determination, the ALJ noted that the medical record revealed that Plaintiff had limitations in relation to her bilateral trigger thumbs. (Tr. 18). On August 20 2008, K.E.E. underwent a right trigger thumb release performed by Dr. Pramod K. Nelluri. (Tr. 163-169, 177-179, 184-189, 212-214, 229, 256-260, 264-265, 268-269). On August 27, 2008, Dr. Nelluri noted that K.E.E. was "doing quite well," and that K.E.E. was almost able to fully extend at the interphalangeal joint of the thumb. At that time, K.E.E. was released to regular activities. In October of 2008, Dr. Nelluri noted that K.E.E. had a "mild flexion deformity" of the left thumb, and that K.E.E. wanted to undergo a left thumb release. (Tr. 209). Dr. Nelluri noted that K.E.E.'s right thumb was "doing fine" with full extension and flexion.

In making this finding, the ALJ also referred to Mr. Riddle's September of 2008 Teacher Questionnaire. Mr. Riddle reported as follows:

> [K.E.E.] has "trigger thumbs" on both hands and is going through multiple surgeries for them. She is making good progress despite dealing with the surgeries and associated pain and restrictions on use.

(Tr. 194). At that time, Mr. Riddle noted K.E.E. had an obvious problem with her hands with regard to moving and manipulating things, demonstrating strength, and dexterity in activities or tasks. In November of 2008, Mr. Riddle noted that K.E.E. had done amazingly well with her fine motor skills given the surgeries that she had endured.

-9-

In further support of his finding, the ALJ noted that non-examining medical consultant, Dr. Collie, opined that K.E.E. had a marked limitation in this domain. Dr. Collie made the following comments:

> [Claimant] with four previous surgeries for congenital trigger thumb malformations. Is scheduled for a fifth surgery this month (December 2008). Function has not been fully restored in claimant's hands. Teacher comments that claimant particularly is impaired in the post-operative period, with limitation of function and pain. Now is in inter-surgical time frame with acceptable functioning per Teacher Questionnaire.

(Tr. 253).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that K.E.E. had marked limitations with moving about and manipulating objects.

### 5. Caring for Yourself:

The ALJ found that K.E.E. had less than marked limitations in caring for herself. In making this determination, the ALJ noted that in the December 2008 Function Report, Plaintiff reported K.E.E. was not able to dress herself, brush her teeth, or wash herself without help. The ALJ also noted that Mr. Riddle reported that after her surgeries, K.E.E. had a slight problem with taking care of her personal hygiene and caring for her physical needs. By November of 2008, Mr. Riddle reported that no problems were observed in this domain, and that K.E.E.'s functioning appeared age-appropriate.

In further support of his finding, the ALJ also noted that Dr. Aruffo opined that K.E.E. had less than marked limitations in this domain. (Tr. 337).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that K.E.E. had less than marked limitations in caring for herself.

### 6. Health and Physical Well-Being:

The ALJ found that K.E.E. had no limitation in health and physical well-being. In making this determination, the ALJ noted that K.E.E. was participating in special education and occupational therapy at school, and that Mr. Riddle indicated that K.E.E. was a very happy, well-mannered little girl who tried very hard in class despite her pain and/or limitations caused by her condition and associated surgeries. (Tr. 20, 146-152, 234-240, 151). The ALJ found that the record did not show that K.E.E.'s overall functional capabilities and/or academic success had been threatened as a result of her impairments. The ALJ also noted that in December of 2008, Mr. Riddle had noted that K.E.E. was "making great progress" with her individual therapy plan. (Tr. 277).

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Manley and Dr. Collie, opined that K.E.E. had no limitation in this domain. (Tr. 203-208, 250-255). Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that K.E.E. had no limitation in health and physical well-being.

Based on the foregoing, the Court finds substantial evidence to support the ALJ's determination that K.E.E.'s impairments are not functionally equal to any listed impairment.

## IV. Conclusion

Based upon the foregoing, the Court hereby finds, after considering all the relevant evidence in the record, that there is substantial evidence to support the ALJ's findings and

-11-

conclusions. Accordingly, the Court hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

IT IS SO ORDERED this 25th day of May, 2012.

/s/ *Erin L. Setser*
 HON. ERIN L. SETSER
 UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)